## B. F. Snow, Appellant, v. Charles H. Anderson, Appellee.

### Gen. No. 8,730.

Opinion filed April 11, 1933.

LILLIAN E. SCHLAGENHAUF, for appellant.

JOHN F. GARNER, for appellee.

Mr. Justice Shurtleff delivered the opinion of the court.

On May 5, 1932, appellant, B. F. Snow, filed his bill for foreclosure in the circuit court of Adams county, Illinois, against Charles H. Anderson, appellee, in which said appellant averred that on March 6, 1926, Charles H. Anderson and Maggie Anderson of the City of Quincy, Adams county, Illinois, were indebted to said B. F. Snow in the sum of $300; that they made their certain promissory note of that date to said B. F. Snow for the sum of $300 with interest at the rate of three and one-half per cent per month upon the unpaid principal, said principal sum and interest to be paid in monthly instalments of $25, beginning with March 6, 1926, and a similar amount on the sixth day of each and every month thereafter for a period of 11 months until the entire sum and interest had been paid in full.

To secure the payment of the principal sum and interest, Charles H. Anderson and Maggie Anderson by their mortgage of March 6, 1926, conveyed to said B. F. Snow the following described real estate: The south 64 feet of lot number four in block number 35 of Willard Keyes addition to the City of Quincy, Adams county, Illinois, which deed was acknowledged on March 6, 1926, and filed in the recorder's office of Adams county, Illinois, on March 9, 1926.

The note and mortgage were attached to and made a part of the complainant's bill of complaint and were in words and figures as follows:
"$300.00                    Quincy, Illinois, March 6, 1926.
For Value Received,
undersigned promise to pay to B. F. Snow a licensee under the small Loan act of the State of Illinois Three Hundred Dollars said principal sum to become due and payable as follows, to-wit: $25.00 on the 6th day of each and every month after date hereof for and

including 11 months and $25.00 on March 6, 1927, at the office of the payee in Quincy, Illinois, with interest after date computed at the rate of 3½ per cent per month upon the unpaid principal and payable as it accrues on the 6th day of each month after date hereof.

"And to secure the payment of this note and the interest thereon undersigned hereby irrevocably authorizes any attorney of any court of Record to appear for the undersigned in such court, in term time or vacation, at any time hereafter and confess judgment without process in favor of the holder of this note, for such amount as may appear unpaid thereon, and to waive and release all errors which may intervene in such proceedings and consent to an immediate execution upon such judgment, hereby ratifying and confirming all that said attorney may do by virtue hereof.

"And it is agreed that if default be made in the payment of any of said installments or principal or interest as same becomes due, then at the election of the holder hereof, and without notice the whole of said note shall at once become due and payable, anything hereinbefore contained to the contrary notwithstanding; and in case suit is brought hereon, 10 per cent of balance as attorney's fees for the services of the plaintiff's attorneys, shall be included in any judgment entered in such suit.

Witness.................     Chas. H. Anderson
Address:   924 North 7th     Maggie Anderson

"MORTGAGE—With Power to Appoint Receiver (No.........) This Indenture, Witnesseth, that the Mortgagors Charles H. Anderson, sole heir and devisee of Mary Anderson, deceased, and Maggie Anderson, his wife, of City of Quincy in the County of Adams and State of Illinois, Mortgage and Warrant to B. F. Snow of the City of Quincy, County of Adams and

State of Illinois, to secure the payment of one certain promissory note executed by mortgagors aforesaid bearing even date herewith, payable to B. F. Snow, a licensee under the small loan act of the State of Illinois, for the principal sum of Three Hundred and no–100 ($300.00) dollars said principal sum to become due and payable in installments as follows, to-wit: $25.00 on the 6th day of each and every month after the date hereof for and including 11 months, and $25.00 on March 6, 1927, at the office of the payee in Quincy, Illinois, with interest after date computed at the rate of 3½ per cent per month upon unpaid principal and payable as it accrues on the 6th day of each month after date hereof; the following described real estate, to-wit: The South Sixty-four (64) feet of Lot Number Four (4) in Block Number Thirty-five (35) of Willard Keyes Addition to the City of Quincy and being situated in the County of Adams, in the State of Illinois, hereby releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of the State of Illinois, and all right to retain possession of said premises after any default in payment or breach of any of the covenants or agreements herein contained.

"But it is Expressly Provided and Agreed, That if default be made in the payment of the said one promissory note, or any part thereof, or the interest thereon, or any part thereof, at the time and in the manner above specified for the payment thereof, or in case of waste or non-payment of taxes or assessments on said premises, or of a breach of any of the covenants or agreements herein contained, then and in such case the whole of said principal sum and interest accrued thereon remaining unpaid, secured by the said one promissory note, in this mortgage mentioned, shall thereupon, at the option of the said mortgagee, his heirs, executors, administrators, attorneys or assigns

become immediately due and payable; and this mortgage may be immediately foreclosed to pay the same by said mortgagee, his heirs, executors, administrators, attorneys or assigns; and it shall be lawful for the said mortgagee, his heirs, executors, administrators, attorneys or assigns, to enter into and upon the premises hereby granted, or any part thereof, and to receive and collect all rents, issues and profits thereof.

"Upon the filing of any bill to foreclose this mortgage in any Court having jurisdiction thereof, such Court may appoint any proper person receiver, with power to collect the rents, issues and profits arising out of said premises during the pendency of such foreclosure suit, and until the time to redeem the same from any sale that may be made under any decree foreclosing this mortgage shall expire, and such rents, issues and profits, when collected, may be applied toward the payment of the indebtedness and costs herein mentioned and described. And upon the foreclosure and sale of said premises, there shall be first paid out of the proceeds of such sale all expenses of advertising, selling and conveying said premises, and 10% of balance as attorney's or solicitor's fees, to be included in the decree in such proceeding, as part of the complainant's cost therein, and all moneys advanced for premium for insurance, taxes, assessments and other liens, then there shall be paid the principal of said note whether due and payable by the terms thereof or not, and the interest thereon.

"Dated this 6th day of March, A. D. 1926.

Chas. H. Anderson (seal)

Maggie Anderson (seal)"

"State of Illinois, Adams County, ss.

"I, J. R. Morton, Notary Public, in and for said County in the State aforesaid, do hereby certify that Charles H. Anderson and Maggie Anderson, his wife, personally known to me to be the same person whose names are subscribed to the foregoing instrument as

having executed the same, appeared before me this day in person, and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth, including the release and waiver of the right of Homestead.

"Given under my hand and Notarial seal, this 6th day of March, A. D. 1926.

J. R. Morton, Notary Public."

The bill was later amended by inserting and describing appellee, B. F. Snow, as "a licensee under the Small Loan Act of the State of Illinois." The bill had been answered, averring payment of the note, and a replication was filed and the cause referred to the master in chancery to take the proofs, but upon the amendment of the bill appellee demurred to the bill generally and set out special grounds of demurrer as follows:

1. "That it appears by said amended bill that interest or charges in excess of those permitted by an act to license and regulate the business of making loans in the sum of Three Hundred Dollars ($300.00) or less, approved June 14, 1917, was charged by the complainant.

2. "That it appears by said amended bill that interest or charges in excess of those permitted by an act to license and regulate the business of making loans in sums of Three Hundred Dollars ($300.00) or less, approved June 14, 1917, was contracted for between the complainant and defendant.

3. "That it appears by said amended bill that interest or charges in excess of those permitted by an act to license and regulate the business of making loans in sums of Three Hundred Dollars ($300.00) or less, approved June 14, 1917, was received by the complainant." The court sustained the demurrer and dismissed the bill, from which decree appellant has brought the record to this court by appeal.

Appellee contends that by the terms of the mortgage, the appellant has contracted to charge the appellee, in addition to the three and one-half per cent per month, on the full principal sum of $300 the following items:

1. Costs of foreclosure.
2. Master's fees and commissions.
3. Advertising.
4. Selling.
5. Conveying.
6. Money advanced for insurance.
7. Taxes.
8. Assessments.
9. Cost of Receiver.
10. Rents, issues and profits during receivership.
11. Other liens,

and that the only legal item permitted to be charged under the Small Loan Act in addition to the three and one-half per cent per month is the cost of recording papers and an attorney fee for entry of judgment or foreclosure, not to exceed 10 per cent. The act cannot be construed to include any other costs.

Section one of the act, Cahill's St. ch. 74, ¶ 27 (being section 13 of chapter 74 of Smith-Hurd's Rev. St. 1931) provided: "It shall be unlawful to make any loan of money, credit, goods, or things in action in the amount or to the value of three hundred dollars ($300.00) or less, whether secured or unsecured, and charge, contract for, or receive a greater rate of interest than seven (7) per centum per annum therefor, without first obtaining a license from the Department of Trade and Commerce as herein provided," etc.

Cahill's St. ch. 74, ¶ 28 (section 14 of Smith-Hurd Rev. St.) provides: "Every licensee licensed hereunder may loan any sum of money, goods, or things in action, not exceeding in amount or value the sum of three hundred dollars ($300), and may charge, contract for and receive thereon interest at a rate

not to exceed three and one-half (3½) per centum per month.

"Interest shall not be payable in advance or compounded and shall be computed on unpaid balances. In addition to the interest herein provided for, no further or other charge, or amount whatsoever for any examination, service, brokerage, commission, attorney fee (except for foreclosure or entry of judgment), and in no case shall a greater amount be allowed as attorney fee than as is evidenced by 10 per cent of the amount found to be due or other thing shall be directly or indirectly charged, contracted for or received, except the lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for filing or recording in any public office any instrument securing the loan, which fees may be collected when the loan is made, or at any time thereafter.

"If interest or charges in excess of those permitted by this Act shall be charged, contracted for or received by any licensee, the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever.

"No person shall owe any licensee at any time more than three hundred dollars ($300) for principal."

From paragraphs 27 and 28 of Cahill's St. ch. 74 (sections 13 and 14 of Smith-Hurd) it is clear that licensees under this act may take mortgages on chattels and real estate to secure the loans, which they or any one licensed may make. And it is also clear that under paragraph 28 (section 14) the licensee, mortgagee, may foreclose his mortgage agreeably to the rules, customs and usages of a court of equity in the State of Illinois and have an attorney's fee allowed to the mortgagee not to exceed the amount prescribed by said section. The special provisions as to the attorney's fee and "the lawful fees, if any, actually and

necessarily paid out by the licensee to any public offi-
cer for filing or recording in any public office any in-
strument securing the loan, which fees may be col-
lected when the loan is made or at any time there-
after,'' are mentioned in the law, for the reason that
they are the only fees or charges with which the mort-
gagee or note holder have anything to do, or in which
he is interested or required to pay. The whole intent
of the law is to make it impossible for the licensee di-
rectly or indirectly to make a charge of interest greater
than three and one-half per cent per month. The court
fees on foreclosure, .the master's fees and commis-
sions, advertising when necessary, selling by the
master, or other commissioner, when appointed by
the court, the conveyance by the master, the cost
of the receiver and the rents, issues and profits
during the receivership, are all legal parts of the
proceedings of a court of chancery, the fees fixed by
statute and all fees to be paid to the officers of the
court, with which the mortgagee has nothing to do
and all follow the property in the foreclosure suit as
incidents of the mortgage and under the law, in equity,
the mortgagee is entitled to have such costs and fees
paid out of a sale of the property, in which the mort-
gagee can in no manner participate. The Small Loan
Act does not mention these items, but the general law
provides for their payment as costs in the case.

As to taxes and assessments, practically the same
reasoning applies. Taxes and assessments are a pub-
lic charge, the liability for their payment is fixed by
statute, and the payment of the taxes and assessments,
when they become due, enters into and is a part of
the security which the mortgagee, under this law, is
permitted to take.

The mortgage in this case also provides that upon
the nonpayment of taxes the mortgagee may declare
the entire debt due, and it is mentioned as one of the

breach of covenants that may arise under this instrument. We do not deem this as any attempt by any possibility on the part of the mortgagee, by contract or otherwise, to exact or obtain any additional interest upon the loan.

In the mortgage near the bottom in fine print, as a part of a clause providing for the distribution of the proceeds of sale, there is a clause: "and all moneys advanced for premium for insurance," etc. "as part of complainant's costs," etc. This is a clause of a different nature. No claim is made in the bill for any such payment of premiums for insurance. No such claim could be made in the bill or otherwise, unless there was a contract or covenant in the mortgage given by way of security, providing that the mortgagor should keep any of the buildings upon the premises insured for a definite amount. There is no such clause in the mortgage and the mortgagor did not covenant to keep the premises insured in any amount and, therefore, in that respect the mortgagor was not requested to and did not incur any liability as to insurance. The mortgagee does not claim any such liability. The mortgage was drawn upon an ordinary printed form mortgage. A great many clauses of the form were scratched out, apparently to make the form used comply with the Small Loan Act. This clause in the mortgage in question is meaningless, is of no effect and is apparently a clerical error and amounts to nothing in substance warranting a court of equity to declare a forefeiture.

For the reasons stated, the decree of the circuit court of Adams county is reversed, and the cause remanded to that court, with directions to require appellee to answer the bill of complaint.

*Reversed and remanded with directions.*